[Civ. No. 69718. Second Dist., Div. Seven. Mar. 7, 1984.]

AMERICAN ADVERTISING AND SALES COMPANY,
Plaintiff and Appellant, v.
MID-WESTERN TRANSPORT, Defendant and Respondent.

**COUNSEL**

Ackerman, Mordock & Bowen and Richard C. Ackerman for Plaintiff and Appellant.

Guy R. Lochhead for Defendant and Respondent.

## OPINION

**JOHNSON, J.—** ■ ■ ■ ■ Plaintiff "American" appeals from an order dismissing its first amended complaint following a summary judgment in favor of defendant "Mid-Western" and from an order denying plaintiff's motion to file a second amended complaint.[1]

Robert Walters is the principal stockholder in several corporations engaged in the trucking business. Among them are American Advertising and Sales Company, (American) and National Carrier Service (National). Walters owns the majority of the stock in American and American owns all of the stock in National. Walters is president of both companies and operates both companies out of a common office. Separate records are kept for both companies. National is licensed as a motor transportation broker by the Interstate Commerce Commission (ICC); American is not.

In a complaint verified by Walters, American sued defendant Mid-Western Transport (Mid-Western). Mid-Western demurred on the ground, inter alia, that the complaint did not allege that American was an ICC licensed motor transportation broker. In response to this demurrer, American filed a first amended complaint, also verified by Walters, alleging that American "is, and at all times herein mentioned was, a motor transportation broker licensed by the Interstate Commerce Commission."

Armed with an affidavit from the ICC that American was not licensed by it, Mid-Western moved for summary judgment. American responded with a motion for leave to file a second amended complaint, verified again by Walters, alleging that the contract was actually between Mid-Western and

---

[1]The notice of appeal only refers to the "summary judgment order." It does not mention denial of the motion to file an amended complaint. Moreover, denial of a motion to amend is generally not an appealable order. (Code Civ. Proc., § 904.1.) Nevertheless, we are directed to construe a notice of appeal liberally in favor of its sufficiency. (Cal. Rules of Court, rule 1(a).) And, it has been held, an order denying leave to amend a complaint is appealable where it is in effect a final determination of plaintiff's rights. (*Dominguez* v. *City of Alhambra* (1981) 118 Cal.App.3d 237, 241 [173 Cal.Rptr. 345].)

For these reasons and because both parties have briefed the amendment issue and it appears to be the only viable issue in this case, we will treat the order taking the motion for leave to file an amended complaint off calendar as a denial of that motion; we will treat that order in combination with the order of dismissal as an appealable final judgment; and we will treat the notice of appeal as an appeal from the order denying leave to amend.

American's wholly owned subsidiary, National, which was licensed by the ICC.

The trial court granted Mid-Western's motion for summary judgment and denied American's motion to file an amended complaint.

American does not dispute the correctness of summary judgment for Mid-Western on the first amended complaint.[2]

The motion for leave to file a second amended complaint was based on the declaration of Robert Walters stating that he was the president of American and another corporation, "National," and that actually it was National, an ICC licensed motor transportation broker, that had the contract with Mid-Western and performed the services in issue.

■ Ordinarily a court would be inclined to allow an amendment to cure a mistaken or inadvertent allegation. (See, e.g., *Lamoreux* v. *San Diego etc. Ry. Co.* (1957) 48 Cal.2d 617, 623 [311 P.2d 1].) But a court is not required to accept an amended complaint that is not filed in good faith, is frivolous or sham. (*People* v. *Oken* (1958) 159 Cal.App.2d 456, 462 [324 P.2d 58].)

Here, the original complaint was filed by American in March 1981 based on a breach of contract by defendant Mid-Western that allegedly occurred in October of 1979. That complaint was verified by Robert Walters, president of American. American filed its first amended complaint in June 1981, again verified by Walters, in which it alleged that American "is, and at all times herein mentioned was, a motor transportation broker licensed by the Interstate Commerce Commission." Answering Mid-Western's cross-complaint, Walters denied under penalty of perjury that Mid-Western's dealings were exclusively with National and that it had no dealings with American. Walters also filed a declaration and gave answers to interrogatories in which he swore that it was American that rendered the subject services to Mid-Western.

Up until the time Mid-Western moved for summary judgment, Walters had made repeated statements under oath that American was ICC licensed and that it had performed brokerage services for Mid-Western. But, when

---

[2]Summary judgment was based on the undisputed fact that American was not licensed by the Interstate Commerce Commission as an interstate motor transportation broker and therefore as a matter of law could not enforce its contract with Mid-Western. (Cf. *Mansfield* v. *Hyde* (1952) 112 Cal.App.2d 133, 139 [245 P.2d 577]; *Orlinoff* v. *Campbell* (1949) 91 Cal.App.2d 382, 388 [205 P.2d 67].)

faced with an affidavit from the secretary of the ICC that its records showed no license issued to American, Walters suddenly realized that for the past two and a half years he had been "confused" and "mistaken" and that the brokerage services were actually performed by National under a different contract and that, while American is not licensed by the ICC, National is. According to Walters, it was only "upon receipt of defendant's motion for summary judgment" (and, we note, the imminent loss of his lawsuit) that he "made a complete review of the files in this matter and discovered the . . . facts."

The well-established rule is that a proposed amendment which contradicts allegations in an earlier pleading will not be allowed in the absence of "very satisfactory evidence" upon which it is "clearly shown that the earlier pleading is the result of mistake or inadvertence." (*Tognazzi* v. *Wilhelm* (1936) 6 Cal.2d 123, 127 [56 P.2d 1227]; *Meyer* v. *State Board of Equalization* (1954) 42 Cal.2d 376, 386 [267 P.2d 257].)

The only evidence of mistake or inadvertence is Walters' self-serving declaration, filed in the wake of damning evidence from the ICC, that for the past two and a half years he had been operating under the mistaken belief that American was ICC licensed and had provided brokerage services to Mid-Western. There is substantial evidence in the record refuting Walters' claim. The matters over which Walters claims to have been confused, American's brokerage services to Mid-Western and its ICC licensure, arose on the filing of American's original and first amended complaint, Mid-Western's demurrer to the original complaint, Walters' verified answer to Mid-Western's cross-complaint, American's application for a writ of attachment and Walters' responses to interrogatories. Courts are understandably suspicious of a party's belated claim of mistaken admission of facts where the party has had unrestricted access to the facts, presumptive knowledge of what occurred, and several opportunities to present the correct facts. (Cf. *Roemer* v. *Retail Credit Co.* (1975) 44 Cal.App.3d 926, 939 [119 Cal.Rptr. 82].)

Walters' credibility was for the trial court to determine. (*Conway* v. *Municipal Court* (1980) 107 Cal.App.3d 1009, 1017 [166 Cal.Rptr. 246].) There was ample evidence from which the trial court could conclude that Walters was playing fast and loose with the truth in this case. We do not interfere with a trial court's determination of credibility. (*Coordinated Construction, Inc.* v. *Canoga Big "A", Inc.* (1965) 238 Cal.App.2d 313, 319 [47 Cal.Rptr. 749].) The absence or presence of good faith on the part of the moving party certainly bears on the exercise of the court's discretion in granting or denying leave to file an amended complaint, (*Tognazzi*

v. *Wilhelm, supra,* 6 Cal.2d at p. 127); especially one which constitutes an about-face from the position originally taken by the plaintiff and steadfastly maintained through law and motion and discovery proceedings.

■  An appellate court will not interfere with the denial of a motion to amend unless an abuse of discretion is manifest. (*IMO Development Corp.* v. *Dow Corning Corp.* (1982) 135 Cal.App.3d 451, 461 [185 Cal.Rptr. 341].)  ■  No abuse of discretion appears in this case.

The judgment is affirmed.

Schauer, P. J., and Thompson, J., concurred.