[No. B151987. Second Dist., Div. Four. June 24, 2002.]

JE HO LIM, Plaintiff and Appellant, v.
THE.TV CORPORATION INTERNATIONAL, Defendant and
Respondent.

COUNSEL

Law Offices of Richard D. Farkas and Richard D. Farkas for Plaintiff and Appellant.

Latham & Watkins, Perry J. Viscounty, Mark A. Finkelstein and Allison K. Chock for Defendant and Respondent.

OPINION

**EPSTEIN, Acting P. J.**—This is a pleading case, reaching us after a demurrer to the last permitted pleading was sustained without leave to amend. The case arises in the context of an auction, and we are asked to decide, primarily, whether the pleading adequately states a cause of action for breach of a contract formed by that process. We also are asked to decide whether other, related causes of action were adequately pleaded. We conclude the demurrer should have been overruled.

### FACTUAL AND PROCEDURAL SUMMARY

Since this is a pleading case, we focus on the charging pleading, the second amended complaint. We refer to earlier pleadings only as they are

pertinent to the permissibility and adequacy of the charging pleading. We begin with a discussion of the general allegations, and the first cause of action for breach of contract.

Plaintiff Je Ho Lim is a resident of South Korea, doing business as Future Computing Solutions. Defendant is sued as dotTV Corporation, a Delaware corporation with principal offices in California. (We are informed that its actual name is The.TV Corporation International, but we shall use the style adopted by both sides in the trial court litigation and in their appellate briefs.) DotTV registers Internet domain names for a fee. It acquired the top-level domain name "tv" through an agreement with the island nation of Tuvalu, which owns the rights to that geographic designation. dotTV offers to register most names on a first come-first served basis, for $50 a year. The party paying the fee has its name registered with the letters "tv" appearing after the dot. The combined designation is its domain name. Thus, a person named Jones who is first to register his name with the designation would own the right to use the name "Jones.tv." Defendant uses the public auction method to sell registration for common or generic names that it deems to have broader commercial appeal. The name "Golf.tv" was deemed by defendant to fall into that category, and defendant posted it on its Web site for auction to the highest bidder. (The name "golf" sometimes appears in the pleadings and briefs in its proper noun form, "Golf," and sometimes in lower case; we, too, use the names interchangeably.) The pleadings about the handling of this auction are central to this appeal.

Following is a synopsis of the substance of plaintiff's allegations about the auction sale of the domain name. By offering registration of the name through its Internet Web site, defendant intended to effectuate transfer of the Golf.tv domain name to the person or entity that submitted the highest bid. It began offering the name in April 2000, and plaintiff bid $1,010 for it on or about May 25, 2000. Defendant represented that the auctions for ".TV" domain names it controlled, such as "Golf.tv," would be fair and open. Offering the name at auction was an offer, and plaintiff's bid was an acceptance, conditioned on there being no higher bids. Since plaintiff accepted the offer precisely as it was made, and no one submitted a higher bid, a contract resulted between the parties. Plaintiff's acceptance of dotTV's offer was pursuant to established law as well as Internet custom and practice, and in accordance with policies and procedures established by defendant. Plaintiff authorized charging his credit card for the amount of the bid. Defendant memorialized the contract by an e-mail to plaintiff, and charged plaintiff's credit card for the amount of the bid. This price was for a first year registration, and defendant also agreed that the annual fee after that would increase by 5 percent and that plaintiff "would have 'the guaranteed

right to renew the registration indefinitely.' " The e-mail notification to plaintiff was, in its own terms, an " 'E-MAIL INVOICE FOR DOMAIN REGISTRATION.' " It was sent in response to plaintiff's bid (acceptance) and stated " 'Congratulations!' and 'You have won the auction. . . .' " The only auction in which plaintiff participated with defendant was the one for the name rights to "Golf.tv," the name offered by defendant.

The e-mail from defendant is an incorporated exhibit of the pleading. In pertinent part, it reads:

"dotTV—The New Frontier on the Internet

"E-MAIL INVOICE FOR DOMAIN REGISTRATION

"Name: JE HO LIM

"Congratulations!

"You have won the auction for the following domain name:

"Domain Name:— —golf

"Subscription Length: 2 years, starts from activation date

"Amount (US$): $1,010 (first year annual registration fee)

"Please remember that the annual registration fee increases by 5% annually. You have the guaranteed right to renew the registration indefinitely.

"dotTV expects to charge your card and activate the registered domain names by May 15, 2000. All registrants will be contacted by email to provide additional information in order to activate the registered domain names. [¶] . . . [¶]

"See ya on the new frontier of the Internet!

"Lou Kerner CEO, dotTV Corporation www.TV"

But "[t]hereafter" defendant tried to renege and disavow the agreement. It notified plaintiff that " 'we have decided to release you from your bid' " and that plaintiff should " 'disregard' " the acceptance notification, "purportedly blaming 'an email error that occurred.' " Later, defendant publicly offered the name "Golf.tv" with an opening bid (which we take to mean a reserve) of $1 million.

Plaintiff authorized credit card payment for his winning bid. (The pleading is not clear whether this was part of the bidding process itself, or was in response to the notification that plaintiff had "won the auction.") Plaintiff formally demanded that all right, title and interest in the name "Golf.tv" be confirmed to him, and that defendant take no action to offer the name to others or dilute plaintiff's interest. "Defendant refused, claiming that 'the reserve price on the auction had not been met' and that Plaintiff was 'merely trying to capitalize on a technical error that occurred in our system.' "

The pleading alleges that after plaintiff's successful bid, defendant tried to disavow "its acceptance of Plaintiff's offer" by claiming that the e-mail concerned a different domain name, "— —golf" instead of "golf." Plaintiff alleges this was pretextual, as characters such as the two dashes ("— —") are not recognized in the Internet, and the name "— —golf" is invalid, a fact recognized by defendant itself.

The complaint goes on to allege causes of action for intentional misrepresentation and fraud, breach of the implied covenant of good faith and fair dealing, and for declaratory relief. We shall discuss these later in our opinion.

As we have indicated, the trial court sustained defendant's demurrer to this pleading without leave to amend. It explained its reasons in a four-page order.

With respect to the breach of contract cause of action, the court recounted that the first amended complaint alleged that the bid for the domain name "golf.tv" was an offer and was accepted by defendant's e-mail. The court ruled that the e-mail referred to the name as "— —golf," which is different from "golf," and since the offer and acceptance referred to different names, no contract was formed. The order states that in the second amended complaint plaintiff tried to plead around this problem by alleging that the bid was an acceptance of defendant's offer and that the e-mail merely memorialized the agreement, but that this is impermissible because it is inconsistent with the earlier pleading.

Judgment of dismissal was signed shortly after the ruling, and a timely notice of appeal was filed after that.

### DISCUSSION

### I

As we noted at the outset, this is a pleading case. In an original Field Code provision, Code of Civil Procedure section 452 commands that "In the

construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (See 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 403, p. 501.) California law emphasizes ultimate fact pleading (with some exceptions, notably for fraud and related torts) "in ordinary and concise language," and the test for adequacy is not absolute but "whether the pleading as a whole apprises the adversary of the factual basis of the claim." (*Id.*, § 339, pp. 436, 438; see also *Semole v. Sansoucie* (1972) 28 Cal.App.3d 714, 719 [104 Cal.Rptr. 897].)

■ Unless special rules apply, it is apparent that plaintiff has adequately pleaded a contract. Plaintiff's theory is that by announcing the terms of the auction on its Web site, defendant made an offer to sell the registration rights to the name "Golf.tv" to the highest bidder; that plaintiff's bid accepted the offer, in the exact terms in which it was made; and that since there were no higher bids, a contract was formed selling the registration rights to plaintiff. Plaintiff did not set out the Web site announcement in *haec verba*, but he is not required to do so; a contract may be pleaded according to its legal effect. (See 4 Witkin, Cal. Procedure, *supra*, Pleadings, § 480, p. 573.)

Defendant counters that the Web site posting was not an offer but a solicitation for an offer, much like a general advertisement. ■ The problem with that argument is that an advertisement *can* constitute an offer, depending on how it is phrased and perhaps on other circumstances. (See *Harris v. Time, Inc.* (1987) 191 Cal.App.3d 449, 455 [237 Cal.Rptr. 584].) ■ Plaintiff pleaded it as an offer, and we must accept the pleading as he stated it.

Defendant argues that this formulation in the second amended complaint—that the Web site posting was an offer to register the name to the highest bidder—is inconsistent with the theory pleaded in the first amended complaint, and that plaintiff cannot go against his earlier pleading. ■ But the rule of pleading defendant invokes relates to inconsistent factual averments; it does not apply to alternative or even inconsistent pleading of the legal effect of the same facts. (4 Witkin, Cal. Procedure, *supra*, Pleading, § 413, p. 510, and 5 Witkin, Cal. Procedure, *supra*, Pleading, § 1122, p. 577.) In Witkin's phrase, the effect of "omitted matter destructive" to a cause of action cannot be avoided by simply omitting it in a subsequent pleading. This rule " 'is intended to prevent sham pleadings omitting an incurable defect in the case. However, "[r]ules of pleading are conveniences to promote justice and not to impede or warp it. We do not question the rule that all allegations of fact in a verified complaint, which are subsequently

omitted or contradicted, are still binding on the complainant. The rule is valid and useful, but it does not exist in a vacuum and cannot be mechanically applied. It is a good rule to defeat abuses of the privilege to amend and to discourage sham and untruthful pleadings. It is not a rule, however, which is intended to prevent honest complainants from correcting erroneous allegations of generic terms which may have legal implications but which are also loosely used by laymen or to prevent the correction of ambiguous statements of fact." ' " (*Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 946 [65 Cal.Rptr.2d 777], quoting *Contreras v. Blue Cross of California* (1988) 199 Cal.App.3d 945, 950 [245 Cal.Rptr. 258].) The rule is aimed at averments of *fact* the pleading party attempts to avoid in a later pleading. (See *Continental Ins. Co. v. Lexington Ins. Co.* (1997) 55 Cal.App.4th 637, 646 [64 Cal.Rptr.2d 116].) That is not our case.

■ In this case, the essential facts of the contract cause of action have hardly changed from the first pleading to the last; the principal changes appear to be embellishments. The essential facts about what defendant said in the Web site posting, what plaintiff said in his bid, and what defendant said in the e-mail, have not changed at all.

Defendant argues that a special rule applies in auctions: the offeror reserves the right to reject all bids and remove the offered item, unless it manifests a contrary intent. From this premise, it argues that since plaintiff did not plead that the auction was "without reserve" or words to that effect, defendant was free to reject plaintiff's bid, as it did.

We have been cited to no applicable California statute or case that sets out a rule as explicitly as defendant states it. The closest cited case is *Estate of Lynch* (1923) 62 Cal.App. 687, where the court held that the act of an executor in advertising an estate sale of real estate by auction and calling for sealed bids in writing did not preclude the executor's calling for and receiving higher bids on the date and time announced for the auction. The court added that it did not wish to be understood as holding that a seller could not be "bound by a notice expressed in positive terms that he will accept the highest bid" but that this was not such a case. (*Id.* at p. 690.) The California Uniform Commercial Code states that auction sales are with reserve "unless the goods are in explicit terms put up without reserve." (Cal. U. Com. Code, § 2328, subd. (3).) But that code only applies to the sale of "goods," meaning movables. Defendant correctly acknowledges that a domain name is not "goods" within the purview of the code. (See Annot., What Constitutes "Goods" Within the Scope of UCC Article 2 (1981) 4 A.L.R.4th 912.)

Textwriters and a number of out-of-state cases support the general position that there is a presumption that auctions are with reserve unless there is

a contrary manifestation. The Restatement Second of Contracts, section 28, sets it up this way: at an auction, unless a contrary intention is manifested, the auctioneer invites offers from bidders, which he may accept or reject; when goods are put up without reserve, the auctioneer offers to sell to the highest bidder, regardless of the amount of the bid and the goods cannot be withdrawn unless no bid is made within a reasonable time. Paragraph (2) states: "Unless a contrary intention is manifested, bids at an auction embody terms made known by advertisement, posting or other publication of which bidders are or should be aware, as modified by any announcement made by the auctioneer when the goods are put up." Witkin cites this section, early California cases, and two text writers (Corbin and Williston) for the following rule: "An auctioneer normally solicits or calls for offers, and the bidders are the offerors. Such an offer is revocable, no sale is complete until the fall of his hammer, and the auctioneer may withdraw the goods unless the auction is announced to be *without reserve.*" (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 134, p. 158.) The Restatement illustrates the black-letter rule with two examples. In the first, A publishes an ad saying he will sell his household goods at public auction at a specific time and place; this does not affect his legal relations. In the second, at the announced auction, A's auctioneer holds up a chattel and asks how much he is bid, and urges higher bids after each bid is made. "Each bidder makes an offer to the auctioneer, but he makes no offer to them." (Rest.2d Contracts, § 28, com. b, illus. 1 & 2, pp. 80-81.) But in a third illustration, A advertises that he offers his farm Blackacre for sale to the highest cash bidder and undertakes to convey the property to the person submitting the highest bid at a listed address, within 30 days. "This is an offer, and each bid operates as an acceptance creating rights and duties conditional on no higher bid being received within thirty days." (*Ibid.*, com. c, illus. 3.)

The last Restatement example is closest to the pleaded arrangement in this case, which did not involve a live auction with an auctioneer. But even if defendant's Web site announcement that it was going to sell the domain name "Golf.tv" to the highest bidder was subject to a reservation with the right to reject all bids, plaintiff did not have to plead the contrary to state a cause of action for contract. He pleaded that defendant made an offer by its Web site statement, and no authority is cited to us that would make that a legal impossibility. Plaintiff pleaded that he accepted the offer by his bid, and gained the contract because he was not overbid. There is no insufficiency in this pleading.

We note at this point that defendant, in its brief, states that "immediately" after sending the e-mail to plaintiff telling him that he had won the auction, it sent another telling him that the reserve price for the name had not been

met. This takes an undue liberty with the pleading, which does not allege that defendant "immediately" sent an e-mail stating that the reserve price had not been met. Instead, it alleges that defendant tried to renege its acceptance e-mail on the basis of error, and that it was only after plaintiff had demanded that defendant honor the contract that defendant "refused, claiming that 'the reserve price on the auction had not been met' " and that plaintiff was trying to take advantage of an error.

In any event, but for the difference between "golf" and "— —golf," the "you have won the auction" e-mail confirmed that plaintiff had indeed purchased registration rights to the name. As we have seen, plaintiff alleges that he authorized use of his credit card by defendant to pay for the right he had just won. This is inconsistent with a rejection of all bids or some other action that might have been permitted if the auction had been with reserve. (We note that a claim of mistake was not asserted, and could not have been at this stage, which focuses on the adequacy of the challenged complaint. If it were to be asserted at all, it would be by way of a defense.)

Finally, even if we were to take defendant's point and conclude that the Web site announcement was not an offer but an invitation to make offers, and that plaintiff's bid was an offer, it was accepted by the e-mail, unless that result is precluded by the "golf" versus "— —golf" distinction, which we next discuss.

The communications between the parties relating to the formation of a contract must be read in context. Defendant put the name "Golf.tv" up for public auction, and plaintiff bid on that name and no other. As we have discussed, that was an offer and acceptance, and formed a contract. The distinction between "Golf.tv" and "— —Golf.tv" comes from the acceptance e-mail sent by defendant. Of course, if a contract already had been formed, the designation in that communication would be almost immaterial. Certainly the hyphens preceding the name "golf" could not defeat the existence of an already formed contract. It is only if, as a matter of law, defendant's Web site posting was a solicitation for an offer, so that plaintiff's bid constituted the offer, that the difference is material. But here, once again, the communications must be read in context. Defendant was accepting plaintiff's bid; it plainly was not making a counteroffer, particularly since, according to the pleading, the name "— —Golf" did not "compute"; it did not qualify as a domain name. At least for purposes of pleading, the e-mail must be read as an acknowledgment of plaintiff's winning bid and acceptance, if not confirmation, of the contract.

## II

We turn now to the other issues raised on appeal.

Defendant argues here, as it did before the trial court, that the second cause of action, for intentional misrepresentation and fraud, is inadequately pleaded. The elements of this kind of tort are: (1) a representation, (2) that is false, (3) made with knowledge of its falsity, and (4) with an intent to deceive, coupled with (5) actual detrimental reliance and (6) resulting damage. (See 5 Witkin, Cal. Procedure, *supra*, Pleading, §§ 667, 668, pp. 122, 123.) Unlike most pleadings, a cause of action for fraud must be pleaded with specificity. (*Id.*, § 669, p. 125.) Defendant argues that plaintiff's pleading failed to measure up because it failed to allege that the bid for the domain name was a successful bid; defendant's representation that the auction would be "fair and open" is a statement of opinion and not a basis for fraud; plaintiff failed to plead reliance; the pleading lacked the requisite specificity; and it failed as a pleading for promissory fraud because no contract was formed.

The final claim fails since, as we have explained, the amended complaint did plead an action for breach of contract. Only one of the other claims has merit, and that one is immaterial.

As we have emphasized in our summary, plaintiff repeatedly alleged that he made the winning bid, and quotes from defendant's e-mail that told him so. We agree that the allegation that defendant represented the auction would be "fair and open" is too vague to form a basis for fraud in itself, but this does not matter if the other allegations are sufficient. Plaintiff pleaded reliance. Specifically, he pleaded that when the representations were made, he had no reason to disbelieve them and was ignorant of their falsity, believing them to be true; that he relied on them and was "thereby induced to enter into the domain name auction described herein, and to authorize payment in accordance with procedures established by the defendants"; and that if he had known the truth he would not have "conveyed value" to defendant "or otherwise act[ed] as alleged herein." Finally, he alleges that in reliance upon defendant's representations that it would transfer the name to the highest bidder in the auction process, he expended considerable time, money and effort in developing plans to commercially exploit the name, and suffered monetary damages. This, together with the other allegations, is sufficient to state a cause of action for misrepresentation.

The stated basis of the demurrer to the third cause of action, for breach of the implied covenant of good faith and fair dealing, and the fourth, for declaratory relief, are the same: that there was no contract in the first place, and hence no basis upon which these causes of action could arise. Again, a contract was adequately pleaded.

In light of our conclusion that causes of action were stated, it is not necessary to address plaintiff's argument that he was entitled to a further

opportunity to amend, or his arguments concerning attorney fees awarded to defendant.

## DISPOSITION

The judgment (order of dismissal) is reversed and the cause remanded with instructions to enter a new and different order overruling the demurrer. Plaintiff is to have his costs on appeal.

Hastings, J., and Curry, J., concurred.