Filed 3/28/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., | D073378 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00044721-CU-OR-NC) |
| DAVID WARD, as Successor Trustee, etc., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy M. Casserly, Judge. Reversed.

Dillon Miller & Ahuja, Scott Alan Miller and Jessica Rasmussen for Plaintiff and Appellant.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall and William A. Smelko for Defendant and Respondent.

Walter Dean Ward took out a secured loan in 2007.[1] He did not indicate whether he signed the deed of trust conveying his property to the lender in his individual capacity or in his capacity as sole trustee of the trust in which his property was held. That deed of trust (DOT) was never recorded. Years later, the lender's successor (JPMorgan Chase Bank, N.A. (Chase)) asked for a replacement to foreclose. Walter refused, prompting Chase to sue. The trial court sustained two general demurrers to Chase's complaint, entered a judgment of dismissal, and awarded contractual attorney fees and costs to Walter's son, David Ward, the successor trustee of the trust that held the property.

We believe the central issue on appeal is whether Chase may reframe its action by amendment to omit a fatal allegation in its original complaint. Because we conclude it can, notwithstanding the sham pleading doctrine, the court should have granted leave to amend. Accordingly, we reverse the judgment and the postjudgment order and direct the court to enter a new order sustaining the general demurrers with leave to amend.

FACTUAL AND PROCEDURAL BACKGROUND

In 1999 Walter and Marijane Ward acquired real property in Valley Center (the property). They created the Walter Dean Ward and Marijane Frances Ward Trust Dated January 5, 1996 (the Trust) in 2002 and conveyed the property to it by grant deed. When Marijane passed away in December 2002, Walter became the sole successor trustee and lifetime beneficiary of the Trust.

---

[1]     We refer to members of the Ward family by their first names for clarity, intending no disrespect.

2

In December 2007 Walter took out a loan for $402,876. As security he pledged the property to lender Washington Mutual Bank. The notary public certified that Walter executed the security instrument in his "authorized capacity." Walter signed the DOT in his name and represented in the note that he "ha[d] the right to grant and convey the Property."

The original DOT was never recorded and was later lost, damaged, or destroyed. The copy sent to Washington Mutual could not be recorded because it lacked Walter's original signature. Chase ultimately acquired the promissory note and DOT as Washington Mutual's successor-in-interest.

As a precursor to foreclosure, Chase asked Walter to re-execute and notarize a replacement deed of trust for purposes of recordation. Walter refused. On April 18, 2013, Chase sued Walter in both his individual capacity and his capacity as trustee of the Trust. Central to this appeal is the allegation at paragraph 18 of the verified complaint:

> "By an inadvertent error and misinformation, despite title being vested in Borrower in his capacity as the trustee of Borrower's Trust, Borrower executed Plaintiff's Deed of Trust in his individual capacity, and the true intent of the parties failed, in that, at the time of executing Plaintiff's Deed of Trust, Borrower did not hold title to the Property in his individual capacity." (Hereafter paragraph 18.)

The complaint asserted three causes of action. First, Chase sought an order quieting title to the property to ensure that it had the senior lien. It next sought reformation of the DOT in two respects. Believing Walter would challenge the level of detail in the DOT's property description, Chase sought to correct it to include "certain metes and bounds information" to match the full legal description of the property in the

3

1999 grant deed. Chase also sought to correct the DOT to reflect the "true intent of the

parties" that the property would secure the loan. Finally, Chase sought declaratory relief

as to the enforceability of the DOT, including a declaration that:

- As a revocable inter vivos trust, the Trust was merely a probate-avoiding device. Walter did not dispose of the property when he conveyed it to the Trust in the 2002 grant deed.

- Because Walter was the settlor and lifetime beneficiary of the Trust with power to direct Trust conveyances, he had the equivalent of full ownership.

- When he executed the DOT, Walter had full power to convey the property as security for the note, and the fact that it was held in the Trust did not prevent enforceability of the DOT to reach Trust property as security for the 2007 note.

- The DOT is valid and enforceable against any successor trustee of Walter's.

- The DOT was intended to secure the loan as a first lien against the property.

- The DOT *in fact* secures the loan as a first lien against the property.

In connection with these three causes of action, Chase sought contractual attorney fees

and costs.

Walter passed away in September 2016, and his son David became successor

trustee of the Trust. David filed two general demurrers to Chase's complaint, arguing all

causes of action were barred by the statute of frauds and the applicable statute of

limitations.[2] He claimed Chase's allegations confirmed that the Trust never executed any

---

[2] The record does not indicate what transpired in the litigation after the complaint was filed in April 2013 and before David filed the general demurrers in July 2017.

4

written instrument conveying the property. He also asserted any action for relief from fraud or mistake would be time-barred. Because these allegations were fatal to Chase's action, David argued that leave to amend should be denied.

Represented by new counsel, Chase opposed the demurrers. It claimed the gravamen of its action was to enforce the DOT *as written*, not to correct a mistake in its execution. Relying on the same cases it cites on appeal, Chase explained that it was "of no legal consequence" that Walter did not expressly sign the DOT in his capacity as trustee of the Trust. If paragraph 18 suggested he did so in his "individual capacity," the DOT did not support that allegation.

The trial court sustained both general demurrers. It observed that the parties had "vastly different positions" as to the gravamen of Chase's action. But as the court read the complaint, Chase contended the DOT did not reflect the parties' true intent because it did not indicate that Walter was executing it in his capacity as trustee of the Trust. The court believed Chase was seeking to reform the DOT to reflect the parties' true intent as a precursor to foreclosure. Read in this manner, the lack of a writing was conceded, and an unrecorded and incorrect DOT could not satisfy the statute of frauds (Civ. Code, § 1624, subd. (a)). Further, the court concluded the action was barred under the three-year limitations period for relief from mistake (Code Civ. Proc., § 338, subd. (d))[3] or the catch-all four-year limitations period for other actions (§ 343), implicitly determining that

---

3    Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

5

the action accrued when the DOT was signed in December 2007. It denied leave to amend.

After a judgment of dismissal was entered in his favor, David requested contractual attorney fees and costs. The court granted his motion, awarding $82,325 in fees and $3,967 in costs.

## DISCUSSION

Chase appeals the judgment, arguing the demurrers were erroneously sustained without leave to amend. To the extent we accept this position, it challenges the postjudgment award of fees and costs.

The issues on appeal mirror those raised below. The parties diverge as to the gravamen of Chase's action, offering competing interpretations of paragraph 18 of the verified complaint. Chase minimizes the paragraph, claiming it seeks to enforce the DOT *as written* despite "inartfully" pleading mistake in its execution. Framed in this manner, Chase maintains the statute of frauds and statute of limitations present no bar. To the extent the complaint was confusing or unclear, it argues that leave to amend was improperly denied. In response, David emphasizes paragraph 18 to claim that the heart of Chase's action is to correct a mistake in the execution of the DOT. Invoking the sham pleading doctrine, David argues that Chase cannot simply omit that allegation in an amended pleading.

As we explain, reframed in the manner urged on appeal, Chase could assert a viable cause of action. Because a party may show that amendment is possible for the first time on appeal, we conclude the denial of leave to amend was an abuse of discretion. In

6

doing so, we reject the contention that the proposed amendment would violate the sham pleading doctrine. Our result further compels reversal of the postjudgment award of attorney fees and costs.

1. *Standard of Review*

A general demurrer tests the legal sufficiency of a complaint. On de novo review of an order sustaining of a demurrer, "we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*); *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)

A different standard applies to the denial of leave to amend. If the complaint, liberally construed, can state a cause of action under any theory or if there is a reasonable possibility amendment could cure the defect, a trial court abuses its discretion by denying leave to amend. (*Blank*, *supra*, 39 Cal.3d at p. 318; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081; *Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1037.) We address this issue even if the plaintiff failed to seek amendment before the trial court. (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746 (*City of Stockton*); § 472c, subd. (a).) Unless a complaint is "incapable of amendment," leave to amend should be "liberally allowed as a matter of fairness" where a plaintiff has received no opportunity to amend after a demurrer. (*City of Stockton*, at p. 747.)

7

2.     *Chase Articulates a Viable Legal Theory on Appeal*

Chase claims the gravamen of its action was for declaratory relief to restore a lost deed pursuant to Civil Code, section 3415, subdivision (a). That statute provides: "An action may be maintained by any person interested in any private document or instrument in writing, which has been lost or destroyed, to prove or establish the document or instrument or to compel the issuance, execution, and acknowledgment of a duplicate of the document or instrument." Largely unchanged since its enactment in 1906, the statute reflects the longstanding remedy in equity for restoring lost instruments. (*Brown v. Anderson-Cottonwood Irrigation Dist.* (1920) 183 Cal. 186, 187 (*Brown*); *Atkins Corp. v. Tourny* (1936) 6 Cal.2d 206, 216 ["an equity court possesses full power physically to restore the [lost] document"].)

Chase contends there is no statute of frauds problem with such a claim since it seeks to restore and enforce the DOT *as written*. We agree. A trust is simply a fiduciary relationship with respect to property. Legal title to property owned by a trust is held by the *trustee*, since the trust itself is simply a collection of assets and liabilities. (*Portico Management Group*, *LLC v. Harrison* (2011) 202 Cal.App.4th 464, 473.) A revocable inter vivos trust, like the Trust at issue here, is "a probate avoidance device" that "does not prevent creditors of the settlors—who are often also the trustees and sole beneficiaries during their lifetimes—from reaching trust property." (*Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1349 (*Galdjie*).)

It follows that a signature by the sole trustee and beneficiary of an inter vivos revocable trust is sufficient to convey good title to trust property. (*Galdjie*, *supra*, 113

8

Cal.App.4th at pp. 1349−1350.) "[W]here a trustee signs a contract of sale or deed without reference to his or her representative capacity, the contract or deed is enforceable against the trust." (*Id.* at p. 1349; see *Carne v. Worthington* (2016) 246 Cal.App.4th 548, 551 [because decedent as sole trustee of 1985 revocable inter vivos trust had power during his lifetime to convey good title to real property held by the trust, his signature sufficed to convey title from that trust to a 2009 trust]; *Christy v. Fisher* (1881) 58 Cal. 256, 258 [land conveyed to "James Smith, as administrator of Robert Smith, deceased," vested title in Smith, and Smith's later conveyance transferred legal title even though it was not explicitly made in his capacity as administrator].) Accordingly, even though Walter did not indicate his signing capacity, the DOT conveyed good title to the property.[4]

David responds that the result should be different where "a party specifically pleads that a conveyance did not occur in a representative capacity." But as we later explain, Chase may amend its pleading to omit that allegation.[5] We disagree that estate planning would be thrown "into wholesale disarray" if Walter's signature on the DOT

_____

[4]     This conclusion comports with our facts. Walter represented that he had the right to grant and convey the property, and the notary public certified having satisfactory evidence that Walter executed the instrument in his "authorized capacity."

[5]     *Malerbi & Associates v. Seivert* (1961) 191 Cal.App.2d 760, cited by David, is not on point. A purported contract for the sale of real property was invalid because it completely omitted the name of a purchaser. The seller tried to enforce a document that read, "Received from ____ the purchaser, the sum of ____ Dollars, . . . as a deposit on account of the purchase price of ($122,500.00)." (*Id.* at p. 761.) There is no dispute here that the DOT was signed by Walter; the question is whether it matters that he did not indicate he was signing "as trustee."

9

were sufficient to convey good title. California law sufficiently protects the interests of trustees and third parties. (See *Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1133−1134; Prob. Code, §§ 16002, subd. (a), 16400, 18100.) Walter's status as the sole trustee and lifetime beneficiary further minimizes any prejudice.

Although the analysis is more complex on this issue, we also conclude an action to enforce the DOT *as written* would not be untimely on its face. As we explain, a four-year statute of limitations applies to Chase's reformulated action and accrues from the date Walter refused to execute a replacement deed. Based on the allegations pleaded, such an action would not be untimely on the face of the complaint.

Chase claims it "desires a judicial declaration establishing the existence of the [DOT] so that it may enforce its rights thereunder and non-judicially foreclose its lien." An action seeking declaratory relief has the same limitations period as the underlying legal or equitable claim. (*Bank of New York Mellon v. Citibank*, *N.A.* (2017) 8 Cal.App.5th 935, 943.) Here, the underlying claim is grounded on Civil Code section 3415, subdivision (a).

"An action upon any contract, obligation, or liability founded upon an instrument in writing" carries a four-year statute of limitations. (§ 337, subd. (a).) But a claim is *founded upon* a writing only when it "relies upon the language within a written instrument or contract." (*Smeaton v. Fidelity National Title* (1999) 72 Cal.App.4th 1000, 1004.) The "sole object" of Chase's action would be to restore a lost instrument. (*Shores v. Withers* (1913) 166 Cal. 403, 405.) Finding no other applicable limitations period, we believe the catch-all four-year period for "[a]n action for relief not hereinbefore

10

provided" applies.  (§ 343; see *Piller v. Southern Pac. R. Co.* (1877) 52 Cal. 42, 44 [§ 343 can apply to any suit in equity]; *Moss v. Moss* (1942) 20 Cal.2d 640, 645 [applying § 343 to an action to cancel an instrument as contrary to public policy].)[6]

David did not suggest a different limitations period in his respondent's brief. Instead, he focused on why, with mistake as the gravamen of the action, the demurrer was properly sustained on statute of limitations grounds.  David argued Chase was aware of the alleged mistake in December 2007, when Walter signed the DOT in his individual capacity, but did not sue until April 2013, well past the three-year period for actions founded on mistake (§ 338, subd. (d)).  That said, plainly we cannot apply the three-year period for actions grounded on mistake, since Chase now *disavows* mistake in the DOT's execution.  (Compare *Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 347 [applying § 338, subd. (d)].)  The only statute of limitations argument David raised

---

6　　Chase invokes the 10-year period from the date of maturity under section 882.020, subdivision (a)(1) of the Civil Code.  That statute requires the maturity date to be "ascertainable from the recorded evidence of indebtedness."  Thus, a *recorded* document must state the note's maturity date.  (*Miller v. Provost* (1994) 26 Cal.App.4th 1703, 1707; *Nicolopulos v. Superior Court* (2003) 106 Cal.App.4th 304, 310–311.)

as to Chase's *recharacterized* action was that Walter's passing in 2016 triggered the probate statute of limitations.[7]

For the first time during oral argument, David's counsel asserted a new statute of limitations defense.  He claimed an action based on Civil Code section 3415, subdivision (a) would be barred under the three-year period generally applicable to actions "upon a liability created by statute."  (Code Civ. Proc. § 338, subd. (a).)  But Civil Code section 3415 is not a liability statute; it provides for a means of obtaining judicial relief.  Moreover, "[t]he restoration of lost instruments is an old and well-established function of courts of equity."  (*Brown*, *supra*, 183 Cal. at p. 187; see *Conlin v. Ryan* (1873) 47 Cal. 71, 73 [equitable action to restore a lost deed].)  Thus, Civil Code section 3415 did not really *create* anything, but rather recognized and validated a power courts traditionally exercised.

Although we have not found authority determining the limitations period for actions based on Civil Code section 3415, as we have noted we believe the four-year period in Code of Civil Procedure section 343 would apply to Chase's action as articulated on appeal.  But regardless of which period applies, David does not

---

7       Relying on sections 366.1, 366.2, subdivision (a), and 366.3, subdivision (a), David contends the probate limitations period prevents Chase from reformulating its claim against Walter's estate.  This argument fails because an action against Walter is not "lost by reason of [his] death."  (§ 377.20, subd. (a); see § 377.41; see *Union Savings Bank v. Barrett* (1901) 132 Cal. 453, 454−455 [suit to foreclose a mortgage survives against the decedent's estate].)  Chase's amended complaint would seek recovery "on the same general set of facts" and therefore relate back to the original for statute of limitations purposes.  (*Austin v. Massachusetts Bonding & Ins. Co*. (1961) 56 Cal.2d 596, 600.)

12

demonstrate that Chase's action would be *barred* by accrual. "Critical to applying a statute of limitations is determining the point when the limitations period begins to run." (*Pooshs v. Philip Morris USA*, *Inc.* (2011) 51 Cal.4th 788, 797.) The complaint alleges that before Chase filed suit, the original DOT was lost, damaged, or destroyed, and Walter refused to execute and notarize a replacement. It does not provide dates as to when these events occurred. Based on this silence Chase argues that a demurrer would not lie on statute of limitations grounds.

"Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all its elements.' " (*Fox v. Ethicon Endo-Surgery*, *Inc.* (2005) 35 Cal.4th 797, 806 (*Fox*); see § 312.) Traditionally, "the statute of limitations runs from 'the occurrence of the last element essential to the cause of action.' " (*Aryeh v. Cannon Business Solutions*, *Inc.* (2013) 55 Cal.4th 1185, 1191.) During oral argument, David's counsel took the view that Chase's action accrued *when the deed was lost*, conceding it was unclear from the record when that happened. We can conceive of certain actions where such an accrual date might make sense—e.g., when a *plaintiff* loses the instrument and seeks reissuance. (See *Brown*, *supra*, 183 Cal. at p. 188 [plaintiff's equitable claim for a duplicate rested entirely on her loss of the original].) As we explain, however, that accrual theory is untenable here.

The complaint gives no indication *Chase* lost the original DOT; all it ever claimed to have was a copy that could not be recorded. Chase seeks "a judicial declaration establishing the existence of the [DOT]." In this context, the requirements for declaratory relief inform the accrual date. " 'The fundamental basis of declaratory relief is the

13

existence of an *actual, present controversy* over a proper subject.' " (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79; see § 1060.) "In the context of a demurrer, the courts evaluate whether the factual allegations of a complaint for declaratory relief reveal an actual, ripe controversy exists between the parties." (*Linda Vista Village San Diego Homeowners Assn., Inc. v. Tecolote Investors, LLC* (2015) 234 Cal.App.4th 166, 181.) Critically, *Brown* makes clear that when a plaintiff seeks to restore a lost instrument, "the defendant would not be in the *wrong*" until it had *refused* the plaintiff's demand for reissuance. (*Brown*, *supra*, 183 Cal. at p. 188, italics added.)

Drawing on *Brown* and section 1060's "actual controversy" requirement, Chase is correct that the limitations period for its reformulated declaratory relief action would accrue from the date Walter refused to execute the replacement DOT following Chase's demand. As it notes, the complaint is silent as to when that occurred.[8]

Where a complaint does not reveal on its face that it is barred by the statute of limitations, a plaintiff has no obligation to plead around the defense. (*Union Carbide Corp. v. Superior Court* (1984) 36 Cal.3d 15, 25 (*Union Carbide*); *Spray, Gould & Bowers v. Associated Internat. Ins. Co.* (1999) 71 Cal.App.4th 1260, 1266, fn. 4; see generally, *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 396 [statute of limitations is an

---

8      During oral argument, Chase's counsel ventured that Walter likely refused to execute a replacement shortly before Chase filed suit in April 2013. Additional clarity on the exact date may, of course, be revealed through the discovery process or at trial.

14

affirmative defense].) Accordingly, if Chase brought the action articulated on appeal, that action would not be untimely based on the facts alleged in the complaint.[9]

In summary, recast as an action to enforce the DOT *as written*, Chase's suit would not be barred by the statute of frauds or statute of limitations on our record.

3.      *The Demurrer Was Properly Sustained to the Complaint as Pleaded*

To withstand a demurrer, it is not enough that Chase *could* assert a viable theory. "A demurrer tests the legal sufficiency of factual allegations *in the complaint*." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 42, italics added.) The allegation that Walter mistakenly executed the trust deed in his individual capacity is arguably a well-pleaded fact, assumed true on demurrer.[10]

---

[9]     An important exception to the general rule defining accrual is the discovery rule, which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox*, *supra*, 35 Cal.4th at p. 807.) This rule may be judicially implied " 'in situations where the plaintiff is unable to see or appreciate a breach has occurred.' " (*E-Fab*, *Inc. v. Accountants*, *Inc. Services* (2007) 153 Cal.App.4th 1308, 1318.) If the discovery rule applies, accrual begins only when a plaintiff has reason at least to suspect a factual basis for the elements of its action. (*Fox*, at p. 807.) A plaintiff seeking to rely on the discovery rule to excuse an action time-barred on its face "must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' " (*Id.* at p. 808.) Because on our record Chase's proposed action would not be untimely on its face, we need not resort to the discovery rule to assess its viability. (See *Union Carbide*, *supra*, 36 Cal.3d at p. 25.) To the extent Chase intends to rely on the discovery rule to excuse causes of action that *are* patently untimely in an amended pleading, it would of course need to satisfy the applicable pleading requirements.

[10]    Courts have held that an allegation as to a contracting party's intent "is a conclusion of fact, which need not be accepted for purposes of demurrer." (*Poseidon Development*, *Inc. v. Woodland Lane Estates*, *LLC* (2007) 152 Cal.App.4th 1106, 1114; see *Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1314.) But these cases involve plaintiffs who *invoke* conclusory allegations on appeal. We have not found

We agree with the trial court that paragraph 18 is central to Chase's complaint. Chase sought an order quieting title to reflect that it had the senior lien. Believing Walter would challenge the sufficiency of the legal description, it sought to correct it to reflect the true intent of the parties—i.e., that the property would secure the loan. Although it sought declaratory relief that the DOT *in fact* secured the loan as a first lien, even that cause of action highlighted the need to "correct the public records before third persons without knowledge of the errors and mistakes in the public records rely thereon to their detriment." The complaint's focus is correcting the mistake alleged in paragraph 18. Chase's contention that the gravamen of its complaint is for restoration of a lost deed under Civil Code section 3415, subdivision (a) is unpersuasive; the complaint neither references that statute nor any request to restore a lost deed. Accordingly, the demurrers were properly sustained on statute of limitations grounds.[11], The question becomes whether Chase could cure the defect by amendment.

---

cases taking this approach where a plaintiff *disavows* allegations to reformulate its legal theory. Nor can we disregard the allegation as contradicting an exhibit to the complaint. (*Moran v. Prime Healthcare Mgmt., Inc.* (2016) 3 Cal.App.5th 1131, 1145−1146; *Sarale v. Pacific Gas & Electric Co.* (2010) 189 Cal.App.4th 225, 245.) The fact that Walter signed his name without specifying the capacity does not negate the allegation that he mistakenly signed in his individual capacity.

[11] See *Salazar v. Thomas* (2015) 236 Cal.App.4th 467, 476 [three years for quiet title based on mistake]; *Welsher v. Glickman* (1969) 272 Cal.App.2d 134, 140 [three years for reformation based on mistake].

4. *Chase Should Be Granted Leave to Amend Notwithstanding the Sham Pleading Doctrine*

Generally, if a verified complaint contains allegations fatal to a cause of action, a plaintiff cannot cure the defect by simply omitting those allegations in an amended pleading without explanation. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742 (*Hendy*).) This principle is known as the sham pleading doctrine. But amendment in this manner is allowed where a plaintiff clearly shows that the earlier pleading is the result of mistake or inadvertence. (*Id*. at p. 743; *Meyer v. State Bd. of Equalization* (1954) 42 Cal.2d 376, 386; *American Advertising & Sales Co. v. Mid-Western Transport* (1984) 152 Cal.App.3d 875, 879.) A plaintiff may show mistake or inadvertence, or demonstrate a factual basis for the revised allegation, for the first time on appeal. (See *Hendy*, at p. 743.)

Critically, the sham pleading doctrine "cannot be mechanically applied." (*Avalon Painting Co. v. Alert Lumber Co*. (1965) 234 Cal.App.2d 178, 185 (*Avalon*).) It "is not intended to prevent honest complainants from correcting erroneous allegations or prevent the correction of ambiguous facts." (*Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 751.) Instead "the rule must be taken together with its purpose, which is to prevent [an] amended pleading which is only a sham, when it is apparent that no cause of action can be stated truthfully." (*Callahan v. City and County of San Francisco* (1967) 249 Cal.App.2d 696, 699 (*Callahan*); see *McGee v. McNally* (1981) 119 Cal.App.3d 891, 897 (*McGee*) [where omission did not "impugn[] the credibility of appellants' cause of action," amendment should have been allowed].)

17

Contrary to David's contention, the sham pleading doctrine does not preclude Chase from omitting allegations of mistake in its complaint and reframing its action in the manner urged on appeal. In *Callahan*, *supra*, 249 Cal.App.2d 696, 698, a plaintiff sued the City of San Francisco for negligently maintaining its roads after the car she was a passenger in careened into a lake, paralyzing her. In a prior complaint against only the driver of her car, she alleged that he engaged in willful misconduct. That allegation was dropped in the operative complaint. (*Id.* at pp. 698−699.) Relying on the earlier allegation, the court sustained the demurrer. (*Id.* at p. 698.) Reversing, the appellate court explained that the sham pleading doctrine did not apply. The allegation of willful misconduct in the earlier complaint was "but an allegation of a conclusion" on a question that was "essentially a question of fact." (*Id.* at pp. 699–700.) "It would be unfair to give the city the benefit, at the pleading stage, of assuming that these generic allegations against another may be taken as proved." (*Id.* at p. 700.)

The sham pleading doctrine likewise did not apply in *Avalon*, *supra*, 234 Cal.App.2d 178. In its original cross-complaint, painting subcontractor Avalon alleged an agency relationship between the paint manufacturer and retailer. This allegation was fatal to its breach of warranty cross-claim against the retailer; a known agent of a disclosed principal could not be liable for warranty breach. (*Id.* at p. 182.) Nevertheless, an amended pleading could omit that allegation and simply allege a manufacturer-retailer relationship without triggering the sham pleading doctrine. (*Id.* at pp. 184−185.) As the court explained, omitting reference to the agency relationship was not the sort of omission that "carries with it the onus of untruthfulness." (*Id.* at p. 184.)

18

Similarly, in *Jackson v. Pacific Gas & Electric Co.* (1949) 95 Cal.App.2d 204, an allegation of an employment relationship precluded a personal injury plaintiff's lawsuit against the defendant. But he could omit that inadvertent allegation and clarify the parties' relationship in an amended pleading. (*Id.* at p. 207.) As the court cautioned, "to bind litigants to inadvertent untrue statements of facts and forbid them the inherent right to correct the false by substituting the true facts" would be to condone "miscarriages of justice." (*Id.* at p. 212.)

Another helpful example is *McGee*, *supra*, 119 Cal.App.3d 891. The plaintiff in *McGee* sued his employer for intentional infliction of emotional distress, claiming a campaign of workplace harassment. (*Id.* at p. 893.) His original complaint made an oblique reference to suffering physical harm, but its thrust was emotional injury. The trial court sustained the employer's demurrer without leave to amend, concluding worker's compensation provided the exclusive remedy. (*Ibid.*) Reversing, the appellate court reasoned that the plaintiff should have been granted leave to amend. Allegations of physical injury were "mere 'makeweight,' " and no actual disability claim was made. (*Id.* at p. 895.) The court could conceive reasons why the plaintiff mentioned physical injury, and excluding those tangential allegations in an amended pleading would not impugn the trustworthiness of his action. (*Id.* at p. 897.)

*Smyth v. Berman* (2019) 31 Cal.App.5th 183 offers a useful counterexample. There, the sham pleading doctrine prevented plaintiffs from making a factually inconsistent allegation in their second and third amended complaints where there was no plausible explanation for the change. (*Id.* at p. 196.) In earlier complaints the plaintiffs

19

alleged they had not extended their lease; in later complaints they alleged they had. Their claim that recently located documents supported the change was not plausible; plaintiffs claimed to be present when the oral lease extension was made, and documentary evidence was unnecessary to allege an extension. (*Ibid.*)

We conclude the sham pleading doctrine does not prevent Chase from omitting its allegations of mistake in a reformulated action. The complaint was drafted by prior counsel, and Chase immediately distanced itself from such allegations in responding to the demurrer. This is not a situation where the proposed amendment impugns the trustworthiness of the pleading; new counsel and further legal research presumably revealed the fallacy of the assumption that Walter's signature had to specify that he signed as trustee in the name of the Trust. Indeed, paragraph 18 is best read as a characterization of Walter's signature on the underlying DOT, not as the assertion of a foundational fact that should bind Chase in all subsequent pleadings. (*Callahan*, *supra*, 249 Cal.App.2d at pp. 699–700; see, e.g., *Lim v. The.TV Corp. Internat.* (2002) 99 Cal.App.4th 684, 691 ["[t]he rule is aimed at averments of *fact* the pleading party attempts to avoid in a later pleading"].) On our record, Chase is entitled to amend its complaint to omit these defective allegations. Leave to amend should have been granted. (*City of Stockton*, *supra*, 42 Cal.4th at p. 746.)[12]

---

[12] We do not fault the trial court for denying leave to amend. Chase did not seek leave or cite any case law dealing with the sham pleading doctrine. Even so, a plaintiff may claim for the first time on appeal that amendment is possible, and on our record the sham pleading doctrine does not prevent Chase from omitting its prior allegation of mistake in paragraph 18. (See *Hendy*, *supra*, 54 Cal.3d at p. 743.)

Our analysis does not depend on allegations in Chase's separate action for equitable subrogation and an equitable lien. David requests judicial notice of the complaint in that action to argue that Chase cannot allege new facts if given leave to amend. In our view, no new facts are needed: Chase could omit the allegations of mistake and reformulate this action as one for declaratory relief based on Civil Code section 3415, subdivision (a). Because the related pleading is not relevant to our analysis, David's request for judicial notice is denied. (*Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 ["only *relevant* material may be noticed"].)

Because we reverse the underlying judgment that was the basis of the award, we also reverse the postjudgment order awarding attorney fees and costs to David. (See *Lafferty v. Wells Fargo Bank* (2013) 213 Cal.App.4th 545, 572.)

## DISPOSITION

The judgment and postjudgment order are reversed, and the court is directed to enter a new order granting Chase leave to amend its complaint. Chase is entitled to recover its costs on appeal.

DATO, J.

WE CONCUR:

McCONNELL, P. J.

BENKE, J.

22