Filed 11/17/22  Saba v. Virgo CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| GEORGE A. SABA, | |
| Plaintiff and Appellant, | E077975 |
| v. | (Super.Ct.No. CIVDS1811376) |
| PAUL VIRGO, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County. John M. Tomberlin, Judge. Affirmed.

George A. Saba, in pro. per., for Plaintiff and Appellant.

Freeman Mathis & Gary, Daniel C. Walsh; Wood Smith Henning & Berman and Stephen M. Caine for Defendant and Respondent.

In 2011, attorney George A. Saba was diagnosed with Alzheimer's type dementia, and in 2017, he was involuntarily placed on inactive status after the State Bar determined he was unable to competently perform his duties as an attorney "because of mental infirmity or illness." (Bus. & Prof. Code, § 6007, subd. (b)(3) (section 6007).) Following that decision, Saba sued many of the parties involved in his State Bar hearing, including his defense attorney, Paul Virgo. This is his third appeal on the issue.

In 2018, Saba filed a lawsuit against the State Bar prosecutor who handled his case, the psychologist appointed as his independent medical examiner, and a neuropsychologist with whom the examiner consulted (*Saba I*). He alleged the defendants had conspired to deprive him of his law license by—among other things—requesting irrelevant medical records and appointing an unqualified medical examiner to provide a false opinion. The trial court dismissed Saba's complaint at the pleading stage on the ground his claims arose from constitutionally protected petitioning activity that is shielded by the litigation privilege in Civil Code section 47. We affirmed that judgment in our unpublished decision, *Saba v. Lareau* (June 26, 2019, E070635).

Shortly after his first lawsuit was dismissed, Saba filed this action (*Saba II*) against the doctors, Virgo, the State Bar, and the supervisor of the State Bar's prosecutor based on the same allegations as *Saba I*.[1] In our unpublished decision, *Saba v. Panos* (June 26, 2019, E071166), we affirmed the dismissal of the claims against the doctors on the same privilege grounds as before.

---

[1] Of these defendants, only attorney Virgo is a party to this appeal.

In this appeal, Saba challenges the order granting summary judgment in Virgo's favor. We conclude the trial court correctly determined that Saba had not presented evidence sufficient to go to trial on his claims against his former attorney and therefore affirm the judgment.

## I

## FACTS

### A.     *Disciplinary Background*

Saba is an Army veteran and was admitted to the California Bar in 1988. In 2011, the Loma Linda Veterans Administration Medical Hospital diagnosed him with Alzheimer's type dementia, and he began receiving treatment for his condition in 2015. He is currently 77 years old.

Between late 2014 and early 2017, the State Bar brought five separate disciplinary charges against Saba. The charges alleged various ethical violations, such as filing frivolous cases, and failing to pay and report sanctions totaling over $50,000. Ultimately, the State Bar stayed those charges pending the resolution of his mental competency hearing under section 6007.

### B.     *Saba's State Bar Hearing*

The California Supreme Court holds the exclusive power to disbar, suspend, or place attorneys on inactive status, but the State Bar acts as the court's administrative arm in such matters. (*In re Rose* (2000) 22 Cal.4th 430, 438; Cal. Const., art. VI, § 9.) To carry out that work, the State Bar established the State Bar Court to conduct regulatory

3

and disciplinary proceedings and provide recommendations to the California Supreme Court. (See Cal. Rules of Court, rule 9.12; *In re Attorney Discipline System* (1998) 19 Cal.4th 582, 598.)

Section 6007 sets out the various grounds upon which the State Bar Court may order the involuntary inactive enrollment of an attorney. As relevant here, those reasons include a finding that the attorney is unable to competently perform their duties or is unable to practice without substantial threat of harm to the interests of their clients or the public "because of mental infirmity or illness." (§ 6007, subd. (b)(3).)

In January 2017, the State Bar Court judge found probable cause to investigate Saba's competency to practice law under section 6007, subdivision (b)(3). After appointing Virgo to defend Saba, the judge appointed a psychologist, Dr. Craig Lareau, to conduct an independent medical examination of Saba. Following the examination, Dr. Lareau submitted a 16-page report in which he concluded Saba was "unable to practice law without substantial threat of harm to the interests of his clients or the public" due to "substantial neurocognitive deficits," including poor memory function and difficulty learning and assimilating new information. In response, Saba submitted written comments objecting to Dr. Lareau's evaluation and conclusions.

Saba's hearing took place on December 1, 2017. The Office of Chief Trial Counsel called Dr. Lareau as a witness and submitted into evidence his report, the results of the tests he administered on Saba, and portions of Saba's medical record. Although

4

Virgo represented Saba at the hearing, the judge allowed Saba to act as co-counsel, and in that capacity he cross-examined Dr. Lareau.

In a written statement of decision, the judge found Dr. Lareau's opinion was supported by clear and convincing evidence. The judge observed that Dr. Lareau had evaluated Saba over six and a half-hours and had conducted extensive functional testing. He also noted that Saba's medical records revealed that he had been complaining to his medical providers of forgetfulness since 2011.

The judge highlighted the following passage in Dr. Lareau's report: "On a humanistic note, it is important to remember that the neurocognitive difficulties Mr. Saba is experiencing are beyond his control to change. It must be frustrating for him to have his professional identity as a lawyer challenged by the current process. He knows he has had memory difficulties for several years, and he states he has been trying to complete his current cases for an extended time. He realizes that his cognitive difficulties would likely get worse over time. Unfortunately, he has difficulty recognizing how significant his cognitive deficits have become, in part because he does not want it to be true. To accept that this is now his reality will thrust him unwillingly into another stage of life, where he can no longer be the same provider he has been over the last 30 years. It may be a difficult transition for him to make from a psychological perspective."

The judge concluded his decision by observing that Saba struck him as "a very intelligent man . . . [who] has been a good and aggressive advocate for his clients for the bulk of his many years of practice." However, because of his medical condition and

5

"through no fault of his own, [Saba's] abilities and reliability as an attorney have gradually eroded to the point where he is no longer able to practice law without substantial threat of harm to the interests of his clients and the public. Accordingly and with considerable sadness, [I find] that an order pursuant to section 6007(b)(3) is both appropriate and necessary."

Following his placement on inactive status, Saba unsuccessfully pursued several strategies to challenge the result of his hearing. He sought review of his status determination within the State Bar; sued the parties involved in the hearing in state court; lodged a complaint against Dr. Lareau with the California Board of Psychology; and filed a lawsuit in the Central District of California alleging the defendants engaged in racial discrimination, which the court dismissed as frivolous.

C.      *Saba's Claims Against Virgo and Summary Judgment*

On May 10, 2018, Saba filed this lawsuit, his second state court action, in which he sought over $1 million in compensatory damages as well as punitive damages. He asserted eight causes of action against his former attorney—(1) violation of constitutional due process under both state and federal constitutions; (2) racial discrimination in violation of 42 U.S.C. § 1983; (3) unfair business practices (Bus. & Prof. Code, § 17200 et seq.); (4) breach of fiduciary duty; (5) breach of contract; (6) fraud; (7) intentional infliction of emotional distress; and (8) professional negligence.

6

Saba alleged Virgo had conspired with the State Bar to deprive him of his license. He claimed Virgo was appointed based on the "understanding" that he would "follow the State Bar's orders of what to do and what not to do."

According to Saba, Virgo secretly worked with the prosecutor and the State Bar to obtain irrelevant medical records without his consent, appoint an unqualified medical examiner (Dr. Lareau) to provide a false opinion, and allow his examination to last six and a half-hours when the order stated it could not exceed six hours. Saba alleged Virgo's performance fell below professional standards when he failed to raise sufficient objections to Dr. Lareau's testimony during the hearing and failed to conduct additional discovery and depositions, which, Saba claims, would have "discovered admissible evidence to defeat the charges raised by the State Bar."

On July 7, 2021, Virgo moved for summary judgment. Although Saba did not include Virgo's motion in the appellate record, we are able to review the trial judge's ruling because the record does contain the separate statement of undisputed facts and declarations Virgo submitted to support his motion.

As to Saba's first two causes of action—violation of due process and racial discrimination—Virgo argued he is not a government attorney and was not acting under color of state law when he represented Saba. In support, he submitted his own declaration stating he was a private attorney, as well as the declaration of his attorney, Frances O'Meara, stating the same thing. He also submitted an order from the Central District

dismissing Saba's federal case against Virgo and the other defendants, in which the court concluded that Virgo was "not a state actor."

As to the remaining six causes of action, Virgo argued there was no evidence to show (1) that he had conspired with anyone from the State Bar to deprive Saba of his license or (2) that Saba suffered any injury or damages. In support, he submitted Saba's discovery responses and portions of his deposition testimony in which he admitted he had no documentary or testimonial evidence of a conspiracy. Virgo also submitted evidence Saba had not been employed for a number of years and no longer wished to practice law. He submitted a letter from August 2017, in which Saba told Dr. Lareau, "I made it clear to you and to this Honorable Court that (1) I do not want to practice law in this country; (2) that I have not taken a new case in 2 to 3 years," and that all he wanted to do was complete a case he had taken pro bono because he didn't want to abandon a client who couldn't afford legal services.

Virgo also submitted the transcript of Saba's closing statements in his State Bar hearing in which he told the judge he no longer wanted to practice law and was effectively retired anyway, with the exception of the pro bono case. Saba said, "This is my first time facing any charges by the State Bar. I do not wish to practice law anymore, but my main problem is this one pro bono case that's been hanging for years. My client does not have any money. I have tried to find other attorneys to take over. Mr. Virgo also helped out, talked to at least five lawyers. Nobody wants to take the case over. [¶] I feel that I'm at the end of settling this case and, based on my 30 years' experience, I think it

8

should be resolved in one year. I don't mind signing a stipulation that I'll be out of the practice if I'm given the year to finish this case."

In support of his opposition to the summary judgment motion, Saba submitted his own declaration. Regarding the first two claims based on federal law, Saba declared Virgo had "acted under color of law" when he discriminated against him on the basis of race and denied him equal protection of the laws. In his separate statement of disputed material fact, Saba argued Virgo "was carrying out a governmental function" at his State Bar hearing. As proof of a conspiracy and of Virgo's deficient performance, Saba repeated in his declaration the allegations of conspiracy from his complaint. In response to Virgo's evidence that he was effectively retired and no longer wished to practice law for a salary, Saba argued his previous statements were irrelevant.

On September 21, 2021, San Bernardino County Superior Court Judge John M. Tomberlin held a hearing on the summary judgment motion and announced his tentative decision to grant the motion. He found that Virgo had carried his burden of showing Saba could not establish at least one element of his claims and Saba had not carried his burden of raising a triable issue of material fact in response. The parties submitted on the tentative opinion, and the judge granted summary judgment in Virgo's favor.

## II

## ANALYSIS

A.  *Standard of Review*

Summary judgment is properly granted when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348; *Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 334.)

When a defendant moves for summary judgment on a claim for which the plaintiff would have the burden of proof at trial by a preponderance of the evidence, the defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 (*Aguilar*).) Alternatively, the defendant may present evidence to "show[ ] that one or more elements of the cause of action . . . cannot be established" by the plaintiff. (Code Civ. Proc., § 437c, subd. (p)(2); see *Aguilar*, at p. 853.) And a defendant can make that showing by "present[ing] evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence—as through admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing." (*Aguilar*, at p. 855; see also *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 110 ["Such evidence may consist

10

of the deposition testimony of the plaintiff"'s witnesses, the plaintiff"'s factually devoid discovery responses, or admissions by the plaintiff in deposition or in response to requests for admission that he or she has not discovered anything that supports an essential element of the cause of action"].)

Once the defendant clears this initial hurdle, the burden shifts to the plaintiff to demonstrate a triable issue of material fact. (*Aguilar*, *supra*, 25 Cal.4th at pp. 849-851.) The plaintiff does so by producing evidence that "would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850.)

We review the trial court's ruling on a summary judgment motion de novo, liberally construing the evidence in favor of the party opposing the motion and resolving all doubts about the evidence in favor of the opponent. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

B.      *Virgo Is Entitled to Summary Judgment*

Saba contends the judge erred in granting summary judgment in Virgo's favor. We disagree.

Virgo's approach to summary judgment was to pinpoint elements common to certain claims and demonstrate that Saba lacked evidence to prove those elements. Starting with the due process and discrimination claims, Virgo argued Saba could not prove he was acting under color of state law. Proof of state action—that the defendant was acting under color of state law when he violated the plaintiff's constitutional rights—

11

is a necessary element of both claims. (See *West v. Atkins* (1988) 487 U.S. 42, 48; *Parratt v. Taylor* (1981) 451 U.S. 527, 535-537.)

To support his argument, Virgo submitted declarations from himself and his attorney stating that during the State Bar hearing he represented Saba in his capacity as a private attorney. This evidence was sufficient to carry his initial burden as a moving defendant. An attorney appointed to represent a client in a state proceeding does not become a state actor by participating in the proceeding. (See, e.g., *Jones v. Whisenand* (2017) 8 Cal.App.5th 543, 559 ["It is well established that public defenders performing a lawyer's traditional functions as counsel to a defendant do not act under color of state law"].)

As to the remaining six causes of action, Virgo argued that Saba could not prove he suffered damages nor could he prove the existence of a conspiracy. Proof that the defendant's conduct resulted in damages is a necessary element of each claim. (See *State of Cal. ex rel. Metz v. CCC Information Services, Inc.* (2009) 149 Cal.App.4th 402, 419 [conspiracy requires proof of "the damage resulting from [the wrongful] acts"]; *Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199 [a professional negligence claim requires proof of "actual loss or damage resulting from the attorney's negligence"]; *D'Arrigo Bros. of California v. United Farmworkers of America* (2014) 224 Cal.App.4th 790, 800 [same for breach of contract claims]; *O'Neal v. Stanislaus County Employees' Retirement Assn.* (2017) 8 Cal.App.5th 1184, 1215 [breach of fiduciary duty]; *Lim v. The.TV Corp. Internat.* (2002) 99 Cal.App.4th 684, 694 [fraud]; *Christensen v. Superior*

*Court* (1991) 54 Cal.3d 868, 903 [intentional infliction of emotional distress].) And as pled in the complaint, Saba's claims for unfair business practices, professional negligence, breach of contract and fiduciary duties, fraud, and intentional infliction of emotional distress all hinge on the existence of a conspiracy between Virgo, the State Bar, and Dr. Lareau. As a result, all of these claims, not just the conspiracy claim, require proof of "the formation and operation of the conspiracy." (*State of Cal. ex rel. Metz*, at p. 419.)

To demonstrate Saba couldn't prove the existence of a conspiracy, Virgo submitted evidence that Saba admitted in discovery responses and at his deposition that he had no documentary or testimonial evidence of an agreement between Virgo and the State Bar to deprive him of his license to practice law. This evidence was sufficient to satisfy his initial burden as a moving defendant. (See *Aguilar*, *supra*, 25 Cal.4th at p. 855 [defendant can show plaintiff's lack of evidence "through admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing"].) "When defendants conduct comprehensive discovery, plaintiffs cannot play 'hide the ball.'" (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 106.) If the plaintiffs respond "to comprehensive interrogatories seeking all known facts with boilerplate answers that restate their allegations, . . . the burden of production will almost certainly be shifted to [the plaintiffs] once defendants move for summary judgment and properly present plaintiffs' factually devoid discovery responses." (*Id.* at p. 107, fn. omitted.)

13

To demonstrate Saba couldn't prove he suffered damages, Virgo submitted evidence that Saba admitted he was effectively retired (with the exception of one pro bono matter) and no longer wished to practice law for a salary. This admission satisfies Virgo's burden of proof because it tends to disprove Saba's allegation that placement on inactive status caused him to suffer over $1 million in compensatory damages. If Saba was no longer earning a salary from practicing law and—with the exception of one pro bono case—wanted to retire, then he cannot prove he suffered any financial injury from being placed on inactive status.

Saba responded to Virgo's motion not with evidence tending to counter Virgo's evidence but with conclusory, self-serving statements. To counter Virgo's evidence that he was not a state actor, Saba simply stated in his declaration that Virgo did in fact violate his constitutional rights and did so under "color of law." To counter his prior admission that he had no proof of a conspiracy, Saba simply repeated in his declaration the allegations of conspiracy from his complaint. And to counter his prior admission that he no longer wished to practice law for a salary, he objected that his admission was irrelevant.

Saba's response was inadequate. To survive a motion for summary judgment, a plaintiff's "[a]ffidavits must cite evidentiary facts, not legal conclusions or ultimate facts." (*Taylor v. Financial Casualty & Surety, Inc.* (2021) 67 Cal.App.5th 966, 994.) And, in determining whether any triable issue of material fact exists, the judge may give "great weight" to admissions made in discovery and "disregard contradictory and self-

14

serving affidavits of the party." (*Preach v. Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1451.) As a result, the judge was free to disregard Saba's self-serving legal conclusions in the face of Virgo's evidence.

The purpose of summary judgment is to "provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, *despite their allegations*, trial is in fact necessary to resolve their dispute." (*Aguilar*, *supra*, 25 Cal.4th at p. 843, italics added).) In other words, a summary judgment motion moves past the pleading state and asks plaintiffs to produce evidence to support their allegations. By simply repeating his allegations in the face of Virgo's evidence, Saba failed to demonstrate the need for a trial on his claims. As a result, we conclude the judge correctly granted summary judgment in Virgo's favor.

Our conclusion is not altered by Saba's challenges to various rulings the judge made in response to the party's evidentiary objections. Simply put, because none of the rulings Saba challenges pertains to the evidence the judge relied on to grant summary judgment, he cannot demonstrate prejudice (even if could demonstrate error). (See *Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1449 [an "erroneous evidentiary ruling requires reversal only if 'there is a reasonable probability that a result more favorable to the appealing party would have been reached in the absence of the error'"].)

15

### III

### DISPOSITION

We affirm the judgment. In the interests of justice, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH

J.

We concur:

McKINSTER

Acting P. J.

FIELDS

J.

16